Good afternoon, one and all. And a special day for you, is it, Ms. Scudder, is that how? Yes, it's your day. I see you've come with company, but you don't need any company. Well, I work out of here. Well, good for you. So come on down, as they say. Thank you. Do you want to introduce her or anything? I was going to introduce her, Your Honor, but you seem to have already introduced her. Judging away, and may it please the Court, my name is Michael Forman. We were appointed by this Court to represent Mr. Batiste in this matter. We filed a motion pursuant to Local Rule 46.3 to have a law student present this argument. Ms. Scudder is here. I present Penny Scudder, or Penelope Scudder. She's one of my students, so I tend to go by Penny, for the Court. Great. Thank you so much. And, of course, we want to extend thanks to the firm for taking the case, and for you supervising, and to the program generally for taking on the case. You're on. Good afternoon, Your Honors, and may it please the Court. My name is Penelope Scudder on behalf of Mr. Carlton Batiste. At this point, I would like to reserve three minutes for rebuttal. Three minutes is fine. Thank you. Go ahead. Thank you. Your Honors, Mr. Batiste is not removable from the United States because his 2009 conviction under a New Jersey statute annotated 2C.12.1b.1 is neither a crime of violence nor a crime involving moral turpitude. This is because the least culpable conduct under this New Jersey statute falls outside of the federal generic definition in 8 U.S.C. 1101a.43f defined through 18 U.S.C. 16b. However, should this Court find that Mr. Batiste's conviction is indeed a crime of violence, we would ask that this Court find 8 U.S.C. 1101a.43f and 18 U.S.C. 16b unconstitutionally void for vagueness. So here's a question that I have for you. So in one part of your brief, you write that in the aggravated felony part, you say under the categorical approach, we have to look at the least culpable conduct constituting reckless aggravated assault, and in this case, obviously, drunk driving. But then in the vagueness section of your brief under the categorical approach, you say we look to the ordinary case for the reckless aggravated assault. Which standard should we apply here, and shouldn't we be applying the same standard in either case, in either instance, I should say? Absolutely. It's our position that really under either standard, 18 U.S.C. 16b, it suffers the same defects that Johnson does. We address in our brief the ordinary conduct because it is our interpretation of the Department of Justice's brief that the conduct that they allege falls within the ordinary case. We would urge this Court to apply the least culpable conduct, but that in the event, even using the least culpable conduct, we expect that you reach the conclusion that this is a crime of violence, that even under that analysis, the same two defects are present and that the statute is unconstitutionally void for vagueness. Well, so I understand that you say even if we apply the ordinary case, you win. But I'm trying to figure out, don't rather James and Johnson require that we apply the ordinary case? Those two cases are interesting because you see the same sort of language in Leocal with respect to this particular statute where they refer to the natural course of the ordinary course. However, because this Court has always applied the least culpable conduct, we would urge this Court to adhere to its interpretation and carry it over into this constitutionality doctrine. And I say that because the Supreme Court uses the terms ordinary case, natural case, and least culpable conduct, if not interchangeably, certainly in the same case. They refer to, in Moncrief, under the categorical approach, the minimum conduct necessary. In Leocal, it's the natural case or the ordinary case. So, I mean, it's our position really under either of these. But haven't the sister circuits adopted ordinary case? The Ninth and the Seventh Circuits certainly have. But again, Your Honor, the Supreme Court has never mandated that this standard be adopted. And this Court has always found that the least culpable conduct is the proper conduit for analysis. Should we conform our jurisprudence, then, to use the term ordinary case and no longer use the term we've used in the past, least culpable conduct? No, Your Honor, I don't think so. And, I mean, again, I say that because the Supreme Court seems to use these terms. It's a pretty good directive, though, no? If the Supreme Court uses that term. I would agree. But, again, I would direct your attention back to Moncrief, where they do note that the form of analysis really needs to focus on the least, the minimum conduct which is sufficient to trigger a violation. It's the least of the acts criminalized. Wouldn't it make a difference in this case, if we're talking about the substantial risk of the intentional use of physical force, that the ordinary case of aggravated assault would involve that? I mean, I guess first we have to identify what is the ordinary case. Right, which really brings us back into the realm of void for vaqueness. I'm sorry, before you get to that, but wouldn't the ordinary case exclude something like drunk driving? I think it would depend on how this court reaches what conduct would constitute ordinary conduct. But I do think that even an ordinary aggravated assault, even looking strictly to the elements of this, there is conduct which can be criminalized, which is not a crime of violence. But the ordinary case can't be the least culpable conduct, right? I mean, by definition that can't be it. So then if you have to step away from least culpable conduct, then I think we go back to Judge Prundell's question. What is the ordinary case that seems to require use of force? Well, I mean, arguably, Your Honor, but looking to specifically the definition and the elements, all you have is this recklessly causing injury, and then it's with extreme indifference to the value of human life. And while those two elements would seem to suggest egregious conduct, the reality is that under either an ordinary case, or in this case the least culpable conduct, what you do have is state courts which have allowed conduct to be criminalized that does not necessarily involve this intentional use of force that the Third Circuit has required. So it's the same reason that the Third Circuit has permitted vehicular homicide to be considered something other than a crime of violence, because even here where you have somebody who's acting recklessly, even where their behavior is with a probability as opposed to a possibility of the injury, there's still not the intention to cause harm. But the only way you get to the same result is that if you define the ordinary case in such a way that drunk driving fell within the ambit of that, and I thought where we started a few moments ago was that can't be so, because if the least culpable conduct is drunk driving, the ordinary case can't be the same. So because if the ordinary case was drunk driving resulting in serious bodily injury, then I get it, you'd argue, well, we win then. But since they're not in equipoise, then the first question is how do you define it, and the second question is when you, having defined it and you apply it, what happens, and it can't be the same result as if you had just applied least culpable conduct. No, Your Honor, but even applying this ordinary conduct, and again we would urge this Court to apply the least culpable conduct because that is the standard that this Court has consistently applied, but even applying the ordinary conduct, assuming that this Court could determine what conduct is an ordinary case, and that would require specifically and solely a focus on the elements, even just examining the elements, just examining reckless conduct and extreme indifference to the value of human life, those two elements together do not necessarily involve an intentional use of force against someone else. I mean, the reason for that really is that in looking at how these have been applied, courts have permitted this inference to be drawn with respect to both the defendant's conduct and with respect to the injuries that are suffered. I guess I'm trying to conjure up what other fact patterns would fall within this that wouldn't involve force. Sure. Drunk driving seems to stand out there as a very unusual one, but it seems to me that attempts to cause serious bodily injury to another or causes such injury purposely or unknowingly or under circumstances manifesting extreme indifference to the value of human life recklessly causes such injury. If you're going to cause serious bodily injury to someone, then it would, what other situations would not involve the use of force? Well, and this really goes more, it sort of gets into the land of this hypothetical conduct that's more in line with crimes involving moral turpitude. But, I mean, as an example, you just had the Board of Immigration Appeals in Guzman, Polanco determine that poisoning would not fall within this definition because of the use of force. So, I mean, realistically, as an example, you have two roommates that live together. There's an infestation problem, roaches or spiders or what have you, and roommate A says, well, I'll take care of this, I won't go to the landlord. And they get an industrial-sized can of bug spray, and it's heavy-duty, and there's pesticides and there's also poison in there. And they spray down the counters, and they don't tell their roommate. And they leave, the roommate comes home, makes themselves dinner on the counter. They end up in the hospital with a serious bodily injury. That's agosol. Right, and so you have somebody who's acting both recklessly and with extreme indifference to the value of human life, but there you really don't have someone who's acting with intent to cause harm. And you still have the probability issue because there were prosecutions in the New Jersey courts for drunk driving and similar situations. Exactly, and this, of course, is simply a hypothetical to illustrate that there are instances where even applying just these elements, there's conduct that falls outside of this 16B's definition of crime of violence. But exactly, Your Honor, I mean to the point that this is the reason that we're raising these drunk driving cases is to illustrate the fact that it's not just a mere possibility. The requirement in Moncrief has been met. There is a probability that these cases have been brought and prosecuted successfully. And it's this conduct, which is the least culpable conduct, which does not involve the intentional use of force and does fall outside of this 16B. And it's for that reason that we would ask this court to find that Mr. Baptiste's conviction is not a crime of violence. Didn't Johnson really turn on the confusing list of examples that preceded the residual clause? No. That really seemed to be what was animating the court's decision there. Why would you say that that really can be borrowed into this situation? You don't have the confusing list of examples. Right. Your Honor, I'm glad you brought that up because, as Your Honor is aware, the Johnson court really dealt with an application of a qualitative standard to idealized conduct. It wasn't real-world conduct. It wasn't tied to statutory elements. And so while they do mention that it's tied to this list of confusing examples, they go on to say that, more importantly, almost all of the laws require gauging the riskiness of the conduct in which an individual defendant engages on a particular occasion. They note that, as a general matter, we don't doubt the constitutionality of laws which apply this qualitative standard to real-world conduct. But like the ACCA, 16B applies a qualitative standard to an idealized case as opposed to real-world conduct. Wow. I mean, that would have implications all over the place because there's a way to describe things. I mean, you have to describe things outside of a real-world context. Right. And, again, you know, the government did note in their brief in Johnson that there would be potentially catastrophic consequences. But unless these statutes suffer from the exact same flaws that the ACCA's residual clause did and that 16B does, it's not clear that they would necessarily fall. Your Honor, I see my time is up. That's okay. Finish your thought, and I have another question for you. Absolutely. So, again, it's unclear that without this necessity of both of these elements being met, the riskiness or the indeterminacy as to how to measure the risk as well as how much risk is required, it's unclear that those statutes would necessarily be found unconstitutional. I thought your argument would be that Johnson would help you on the unconstitutionally vague argument. It does, Your Honor. I'm sorry if that wasn't clear. Johnson is absolutely helpful, especially the language regarding this application. So if we apply the ordinary case and get to the constitutional issue, you believe you're fine. But we don't necessarily get to the constitutional issue unless the result of applying the ordinary case is that the crime of violence and aggravated felony is, in fact, he's, in fact, convicted. If he's not and we do the ordinary case and use the drunk driving, then we would just straightforwardly grant the petition. Exactly, Your Honor. Exactly. Joan, may I ask a question on the CIMT? Absolutely. Yes. Why doesn't the conscious disregard requirement of recklessness in New Jersey law, why doesn't that decide the issue here against you? Sure. So, again, Your Honor, the conscious disregard has to be evaluated in light of what the statute actually says. And as you are aware, the Third Circuit, Judge Greenway and Judge Rendell, you've both written opinions dealing with crimes involving moral turpitude. And the Third Circuit requirement, the Third Circuit analysis, is the least culpable conduct which is hypothetically necessary to sustain a conviction. So we're now in the land of mere possibility. And under that particular framework, in the land of this, the hypothetical that I described, as well as drunk driving, you don't have this depravity which is necessary. What about manifesting extreme indifference to the value of human life? I mean, exactly the same thing, Your Honor. The hypothetical as well as the drunk driving, regardless of how these two things come about, there still is not the necessary depravity in either of these two situations. And I say that both because the Third Circuit has noted in NAPIC that drunk driving almost certainly will not involve a crime involving moral turpitude, as well as the fact that driving while intoxicated, while it is a terrible thing to do, doesn't require you to have an evil intent. You don't have to act with depravity. It's just a stupid thing that you shouldn't be doing, but it doesn't involve this conduct which is base-filed or depraved that the Third Circuit and the Supreme Court have required. But Pennsylvania statute didn't have the aggravating factors that the New York statute has here, or the New Jersey statute has, did it? From NAPIC? Although that was New York. Okay, it was New York. It had aggravating factors. Yeah, it did. Great risk of death. But the Pennsylvania law was discretionary. It wasn't definitive. I'm sorry, Your Honor, which Pennsylvania law? The conduct punishable under the Pennsylvania statute dealt with conduct that may put a person in danger. It didn't necessarily implicate crime of moral turpitude. In NAPIC, Your Honor? Yeah. And isn't that a distinguishing factor, that may rather than definitely did? I mean, absolutely, Your Honor. But, again, the language of this case is the BIA could reasonably conclude that the elements of depravity, recklessness, and grave risk of death when considered together implicate accepted rules of morality and the duties owed to society. So while there is a may as opposed to a must, really the only difference here between somebody who drives drunk and someone who drives drunk and causes injury to a third party is that in the one case they get home okay and no one gets hurt, in the second case someone gets hurt. And in either case there simply is not an intent, a baseness, a vileness, or a depravity element in either of those. Are you saying that conscious disregard would be the touchstone? Possibly. What I'm saying, I mean, in either case you have elements which are similar to those in NAPICs. You have both recklessness and grave risk of injury or death. I mean, what it really comes down to is this analysis as to whether there is baseness, vileness, or depravity in the conduct. And so in either situation there simply is not that depravity which this Court has found necessary. Because the statute, the New Jersey statute that defines recklessness, says a person acts recklessly with respect to a material element when he consciously disregards a substantial and unjustifiable risk that this exists or will result. You're saying that's not the same level of depravity? Correct, Your Honor. And I say that because in State v. Kromhold is a perfect example. The language of the Court is that an inference can be drawn as to the existence of those elements. So depending on the level of intoxication a jury can infer that extreme indifference to the value of human life has been met or recklessness has been met. But isn't there a distinction to be drawn in NAPIC between what occurred, which is a simple DUI and one akin to drunk driving in the way that we're talking about it? And as a result of that distinction, shouldn't the result be different? No, Your Honor, because really the only difference between these two events is that on the one hand you have a defendant like Kromhold who drives home every day or frequently and is drunk and does not cause harm to anyone during X number of times. The one time he drives home and he collides with another vehicle, there's serious injury present. But in either case, the behavior there, the intent of the defendant, there's no evil intent. There's no depravity in his conduct. There's nothing to suggest that the difference between a simple DUI and the least culpable conduct under this statute involves depravity because this Court has found that, for example, in Maboub. But that doesn't mean that it could never happen. I mean, under these particular facts, yes, but NAPIC is not saying that there is no set of circumstances in which drunk driving can equate to depravity, etc. Absolutely, Your Honor, but again, the analysis here is the least culpable hypothetical conduct. It's not conduct that needs to have a probability of occurring. As long as this conduct, there's a theoretical possibility that it can be prosecuted under this statute, that's sufficient for this Court's analysis in determining whether it's a crime involving moral turpitude. When you say least culpable, does it mean just getting to drunk driving? It means in looking at the entire spectrum of drunk driving that it must be the, I suppose, the least, I can't think of the word that I really want, but the instance where it's the least odious, I suppose. I mean, yes, Your Honor, and I would direct this Court's attention, actually, to John Louis, the Attorney General. The language there is the possibility of conviction for non-turpitude misconduct, however remote, is sufficient to avoid a removal. The Court there made, I believe, very clear that, honestly, it does not matter if, on the one hand, you have a simple DUI, and on the other hand, you have somebody who causes serious bodily injury, if the least culpable conduct, which is necessary to sustain a conviction, is the fact pattern encrumpled. Would speed limit make a difference if somebody were driving 25 miles an hour as opposed to 80 miles an hour? I mean, that would certainly be something that the jury would take into consideration, I believe, Your Honor. But, again, it's all part of the entire analysis as to the defendant's conduct. And if the jury can infer and has been allowed to infer that the least culpable conduct, I'm sorry, that a blood alcohol content or how fast they are driving contributes to recklessness or to extreme indifference to the value of human life, then you don't have someone who's acting with depravity. You just have somebody who's acting stupidly. Let me ask how you read the statute, the aggravated assault statute. My reading would be guilty of aggravated assault if he attempts to cause serious bodily injury to another. That's one. Yes. Or causes such injury purposely or knowingly. Or causes such injury under circumstances manifesting extreme indifference to the value of human life, recklessly causes such injury. So there's three possibilities here. And you might say that the least culpable conduct would be an attempt to cause serious bodily injury to another, which could be, you know, failed poisoning or could be, you know, trying to push somebody. Well, that would be force. But, in other words, you might conjure up ways to have that be definitely not involving physical force. Right. I mean, again, the problem with the attempts is that it's also very easy to say, well, that necessarily involves a substantial risk that harm will be used or a physical force will be used against someone. Whereas the recklessly, the reckless conduct, I mean, especially under the least culpable conduct, especially here. The mens rea is the least culpable, I guess. That's the point. Right. Okay. Right. Okay. I got that. Okay. Thank you. Thank you so much. Mr. Bless. Yes, may it please the Court. My name is Jesse Bless. I represent the Attorney General of the United States. I want to try and reconcile what we're trying to do here and, again, start with a point of disagreement on least culpable conduct versus ordinary case. And it starts with the framework we must use to delve into whether the petitioner was convicted of a crime of violence so that he is, by reason of a sentence, removable for having committed an aggravated felony. The first step we must do, and this is a categorical approach, and the Supreme Court has dealt with this a number of times in non-crime of violence cases, death camps being the most recent one that we're familiar with. We need to find the least culpable elements of the statutory offense. And then, once we know those, if the statute is divisible, we may select. If it's just categorically all falls within a generic offense, then we don't have to go any further. But what the Supreme Court has made absolutely clear is we cannot look at particular fact patterns, and that is what the petitioner is trying to do here. And so it's not the least culpable conduct. It's the least culpable elementary phrase of the statutory elements. Judge Rendell, you just hit it perfectly. So we break it down, and we look at the three offenses that you, that's the government's position here. There's three offenses. But we're in the third one, right? We agree that under circumstances manifesting extreme indifference to the value of human life, the defendant recklessly causes serious bodily injury. Now, this is not recklessness. As the state of New Jersey has held, this is significantly higher than just reckless conduct. What is? This third prong, this circumstances manifesting extreme indifference to the value of human life, that is not reckless conduct. And drunk driving, actually, if you want to dive into the facts, actually doesn't qualify. You cannot, under the state of New Jersey, there's a case called State v. Oriel, you cannot be convicted of second-degree aggravated assault for majoring drunk driving. It just doesn't happen. It can't happen. And so that's not even, that's not there. And so what is circumstances manifesting extreme indifference? Well, that has been defined in the state of New Jersey as a very, you know, indifference to the value of human life. Someone acting with violent indifference. So it doesn't matter if someone lives or dies. And then they go out and actually injury occurs. And so the Supreme Court in New Jersey, a case called Villar, which is cited in the government's brief, involved a drunken patron who slams a Bear Stein into the waitress's face and causes the serious bodily injury, which is, you know, almost loss of an organ or a substantial risk of death. And there the jury returned a verdict for acting with extreme indifference. By comparison, there's another case, Grant, where a jury actually returned a verdict and said it wasn't extreme indifference for the husband to point a gun at his wife and shoot through her hand because he was so intoxicated he couldn't manifest this extreme level of disregard, this almost violent indifference. But how does that relate to force, the use of force? I mean, someone could be, you know, throwing hatchets, you know, and there are people against the wall and they're throwing hatchets at the person. It's not a use of force, but it's totally indifferent. Totally indifferent. And how do you fit force necessarily into that? Okay, so once we have those three different elementary crimes, now we're moving on towards does that create a crime of violence? Does that create a substantial risk that physical force will be used during the commission of defense? And the case you were on on Aguilar from a couple years back is very helpful for us here, okay, because there the court said in footnote 19, we're not looking at, you know, force doesn't have to occur in every case. And in that case it was sexual assault under Pennsylvania law that could be done recklessly. So a different level of culpability, but it was reckless sexual assault. And there the court made a point to say, you know, we're not looking at whether force always occurs. It's just in the natural course of events. Well, in the natural course of sexual assault, assuming it's an assault and therefore nonconsensual, it will be forced. Absolutely. But how do you say that with respect to what we're talking about here? Because we're dealing with a non-sexual assault. But there's injury. We have to recognize there's always going to be an injury, and it's always going to be serious. And so there's always going to be close proximity. All right, but maybe you trip somebody and they fall down a flight of stairs. Well, if you trip them, you've used force intentionally. If you've intended to trip them, if you accidentally tripped them, you're not going to be convicted of it. I've used force when I put something at the top of the stairs. I put my foot out the top of the stairs and they fall. If you intentionally put your foot. Not very forceful. I have a very dainty foot. Just put it right out there. I'm not so sure. I mean, I guess at that point you may be convicted knowingly and intentionally. Well, maybe I just put a brick out there so they'll fall on it. Is that forceful? I don't know. Where are we going with this? I don't know. I was trying to. I didn't have a dainty foot. I meant generally. Generally what I'm trying to do is walk you through the categorical approach. So once we break down the least culpable. Is the dichotomy, as we suggested earlier, between either adopting, as your adversary has suggested, the notion of the least culpable conduct or the ordinary case? No, I think they both have application here. When we're talking about the least culpable conduct, we're talking about the first step in the categorical approach. But we're not talking about conduct. We're talking about the least culpable offense. And that's death camps. And to the extent cases have used conduct, that's not appropriate anymore. What we need to look, post-death camps, post-Supreme Court, when we're doing a categorical approach is the least culpable offense by element. Not by fact pattern. So James and Johnson don't come into our analysis initially? Not to the extent they're talking about the categorical approach and the first step of that approach. That first step of the categorical approach. I'm not talking about crime and violence context. I'm talking about just the categorical approach under Taylor. We have to find, at a threshold matter, what is the least culpable statutory element-based offense. Not fact pattern. You don't look at facts. You can't. We all understand that. So you disagree that it's drunk driving? Absolutely. That fact pattern doesn't even fall within the state statute. That's number one. That's not even the least culpable. Okay. Then what is? What's the least culpable? By element? Or by? By element. It's acting with extreme indifference to the value of human life, causing serious bodily injury. And we can talk about a thousand hypotheticals, but they're not relevant to what we need to do here, which is determine whether that statutory offense creates, in an ordinary case, a substantial risk that intentional force will be used, that there will be a risk of confrontation, which is what Aguilar hinged on. So when someone acts towards another with this type of violent indifference, is there an inherent risk of confrontation there? He didn't say violent indifference. He said extreme indifference. Well, how it's been- But I can be indifferent by throwing hatchets at people. No, how it's been defined under the state law. And I can direct you to State v. Aguilar and State v. Pagaris, which is also cited in response proof, where they talk about this type of what exactly extreme indifference means. And it doesn't mean this acting wanton. It's much higher than that. I mean, as they say, it's an extreme violent failure to accord any value to human life. Again, it's the beer stein to the waitress's face. But it's not the drunken husband who shoots his wife through the hand. It's really a high level of indifference. And the reason for that is secondary aggravated assault is the highest degree of assault in the state of New Jersey. You have to serve an 85 percent minimum sentence between five and ten years. And so the job for us is to look at whether this extreme indifference, this violent indifference, would create a risk of intentional confrontation in an ordinary case. Not every case, ordinary case. Is that the key, intentional confrontation? Yes, yes. And because in Aguilar, keep in mind... Sure, no, in Aguilar it's easy. At burglary it's easy. Burglary, but if you look at burglary, you say, okay, there's a chance that the homeowners may not be home. And so force may not be used. But the risk is there. No question. No question. Or somebody could come home during the beginning of middle of the burglary. And so here, with aggravated assault, that has to cause serious bodily injury towards another, is the risk that the person is either going to use intentional force or the victim is going to create this conflict. And the government's position is it's the same or it's not dissimilar from burglary, sexual assault. Crimes that have been found where it naturally creates this substantial risk. It doesn't have to. It's just a substantial risk of intentional force being used. And again, you have to look... There's the close proximity to the victim, just as it was in Aguilar and just as it was in burglary. And then there's this also resultant injury that's always in the court. And it's not minor injury. It's not just touching their foot. And it's going to be serious bodily injury. There's going to be force used. What are we to make of those New Jersey cases that did prosecute? A form of aggravated, I use that term colloquially, drunk driving. Does that have any significance here? In this way, in the calculus of what is the natural case, of course, you're going to look at the spectrum of cases covered just as you would in Aguilar. But New Jersey cases also tell us, in a Parker case which I cited, that these types of few, if any, driving offenses are going to fall within second-degree aggravated assault. And those that do, those that do, do create a substantial risk of intentional force being used. One example. It's not just the person's intoxication. In fact, the state of New Jersey has said the level of intoxication is not a sole factor, cannot be a sole factor for aggravated assault. There needs to be more. It has to be more. So it has to be the person who gets in the argument in the parking lot and drives off. So we are looking at conduct. Well, you're not looking at conduct. We're trying to find whether these, you know, it's always helpful, rather than to imagine, to use, you know, to use the examples already found in the state of New Jersey to look at, you know, to look at whether there's a substantial risk that's present. But you're not looking at the fact patterns. Can you reason through it for me? Would you write the opinion that says, under circumstance manifesting extreme indifference to the value of human life, recklessly causes such injury that the ordinary case will, that fits within that definition, will have a substantial likelihood that physical force is being used. Reason through that for me. Yeah. Just as the burglar comes home and does not know whether intentional force will have to be used, the person who acts with extreme indifference does not know whether intentional force, either upon him or towards him, will have to be used. But acting with extreme indifference does not conjure up the scenario in my head that does sexual assault and burglary, because I know what happens with those crimes. I know what happens, and I know what those elements are. But acting with extreme indifference, recklessly causing injury, I can't picture that. So help me do it in a way that doesn't tie in burglary or sexual assault. Okay. It's, or sexual assault. Or sexual assault, because I can conjure up the image of force necessarily being used. But with this descriptor, I can't paint that picture. So I need your help. I'll go back to the Supreme Court's decision in Villar. I don't want to use my own hypotheticals. State v. Villar, Supreme Court, New Jersey. Jury returns a verdict, extreme indifference. The evidence beyond a reasonable doubt shows the petitioner puts a bare stein in a waitress's face. That is anything but intentional force. Okay. But how about my hatchet throwing? I'm not aware of that, and I don't think that would qualify. There are six people against the wall, and I'm throwing hatchets. You hit one of them? Nope. But I am manifesting extreme indifference to the value of human life and being very reckless. But you can't be convicted. Well, I do injure one of them. If you hit one of them, that's more akin to the Graham case, which I described, which would be the drunken husband who shoots at his wife. That may not qualify as this type of manifestation, this deliberateness. It's a level of deliberateness. We're not talking accidental action here. Let's switch gears for a moment. Okay. Why isn't 16b unconstitutionally vague after Johnson? Again, I think the discussion between Justice Scalia and Justice Alito and Kennedy and Thomas are very helpful here because, as the petitioner points out, the government told or tried to persuade a majority of the Supreme Court that these statutes, the ACCA's residual clause and 16b, were similar. And Justice Alito said, well, if you're right, and the majority's opinion strikes down the ACCA's residual clause, this is a nuclear devastation. And the majority responded with, no, no, no, no, no, no. We don't want the nuclear bomb. There are differences there. And the textual differences are ones that are present, that this Court recognized in Aguilar more than once in that decision, Judge Rendell, how that the ACCA's residual clause is completely different. And I can go through at least four differences for you textually and the analysis required for both. The Sixth Circuit just did that and found substantial language difference. So how is serious potential risk of physical injury any less indeterminate than substantial risk of the use of force? Okay. That's the dichotomy, right? Yeah. Well, there's one of them. That's one of them. That's one of them. Okay. Let's start there. Let's start there. The potential risk of injury, okay, was conduct that occurred, was concerned with the after effects of the criminal offense. Because you're not looking at the criminal offense now. We'd have to look at something that happens after, after the elements have been completed. Here in 16b, it's always going to be during the commission of the offense, offense, not conduct. And so it's going to always happen at the satisfaction of the criminal elements. My question to you is, is substantial risk of use of force indeterminate? Your argument is that it's not, and I want to know why. It's not because we don't have to look past the elements to make that determination, whereas in the residual clause you had to because you had to look at the risk of injury, which was not an element of the criminal conduct. I don't get that because it seemed to me like Justice Scalia was making a distinction between substantial risk to real world conduct as opposed to substantial risk to what we have here, the ordinary case of a crime. I don't understand that distinction you're drawing. It was a combination of many things in the residual clause. One of which is in the residual clause. I get the whole list of examples. I get that. I'm just talking about the language. Looking at the two quotes that I gave you, how is it that one is indeterminate and one is not in your view? Because that's what I don't get. One looks at physical force during the offense. One looked at a potential injury after the offense. So it's during the commission versus potential after. That's what makes 16b much more narrow. You're not looking at the after effects of the crime. That's what Justice Scalia kept going back to, along with Judge Rendell. You're right. Every example he used to bolster his argument concerned this having to go back to the exemplar crimes. And he couldn't do it. He could never find a consistent way. Of course, we don't have that problem in 16b. And this is why that discussion or that response to Justice Alito is so prescient and one that, if nothing else, should give courts pause before they make the leap ahead of the Supreme Court. Haven't all these circuits that have addressed 16b and addressed this general issue of 16b come out in a manner inconsistent with what you're arguing? No. I will say that the majority panel in the 9th Circuit and the 7th Circuit did. The 5th Circuit is now going to hear the case in Bank. The 6th Circuit agreed with the government's position. So the 9th and the 7th are against, the 6th is for, and the 5th, we'll wait and see. We'll wait and see if it doesn't moot out. But what's telling, at least to this court, I know it has an independent mind and we're appreciative of that, is that... Whatever that means. Well, I just think when you read, you know, I think that to the government... Get yourself out of that one. The Supreme Court provided guidance that is very helpful, so that I think it actually trumps these cases that may or may not glossed over that. You know, that this back and forth between Justice Scalia and Justice Alito is absolutely the most important consideration, more than these two cases. Could I ask you, you can also prevail on the CIMT issue as well. We could. So why don't you address that? Yeah, and the CIMT context, they are unlike the crime of violence. The first point I'd like to make is that the determination is whether the board reasonably determined, because there's deference that is owed to the board's determination that this is a crime involving moral turpitude. And so the standard to reverse the board on this ground of removability is significantly higher. The board did not act unreasonably by determining that this offense in the state of New Jersey has a sufficient degree of scienter, meaning culpability, plus it's a reprehensible act. When you cause serious bodily injury to someone, and the definition of serious bodily injury in the state of New Jersey is something where you almost have loss of an organ or substantial risk, again, of death. And it's not unreasonable if you look at the board's, because if you look at, it's entirely consistent with how the board's... Take us through that definition again. It's a sufficient degree of scienter plus a reprehensible act. Okay. All right. And is scienter in this context, well, so it's a mens rea requirement, it's not an objective test? Yeah, well, by scienter, yeah, we're looking at... And it has to be, of course, here we're beyond reckless. We're one step below knowingly, way above reckless. And that's how New Jersey looks at it. And so the scienter requirement, or the prong, is satisfied. And the question left then is, is this a reprehensible act? And if you look at how the board has consistently treated these types of aggravated assault offenses and how this court has as well, it's not unreasonable for the board to draw, to determine here that this offense falls within its well-established boundaries. If we were to reverse on the aggravated felony issue, he would be eligible for 212H relief, is that right? I would have to go back. I'm not sure that was something he went for. He was going for... One thing I do know from the administrative proceedings is he was looking at asylum and withholding. And he couldn't, the aggravated felony bar hurt him there. That's an interesting point. I don't know if that's something he could qualify for because there's additional requirements, and I'm not so sure he'd put in for that. But it certainly would require remand. I can agree with you on that because the aggravated felony conviction barred him from withholding of removal under the INA and asylum. And so if we were to come out with a not removable on an aggravated felony basis, but removable on a CIMT, yeah, there's additional things for the agency to do. I appreciate it. If you have any other questions, let me know. I will say this. For a law school to jump in on a difficult case like this, I give them a ton of credit, and so does the department. And so you need to find a job. And you're not done. I would just very briefly like to make two points. First, with respect to the standard of review for crimes involving moral turpitude, Mon v. Attorney General, which was decided in 2014, and you were on that panel, Judge Greenway, forecloses the possibility that one-member BIA panels are afforded Chevron deference. The language is explicit and clear. There is no deference. This is a de novo review. Second, turning to the assertion that the categorical approach forecloses the use of conduct and an evaluation of a fact pattern, I would turn this Court's attention to Montgomery v. Holder at 1687. First, with respect to the rejection of the elements-only approach, and second of all, on the very next page, they list a number of state cases in evaluating whether possession with intent to deliver falls inside or outside of the federal. But I think the distinction is, for the categorical approach, it focuses on the statutory elements, not on the alien's conduct. Exactly. But under Moncrieff, you're saying we can conjure up types of conduct. Exactly, Your Honor. That would fit with him. We're not looking at his conduct. But, I mean, you have to figure it out some way. That's why, you know, burglary and sexual assault, I mean, you have to conjure up exactly what's happening here in order to make this determination. Exactly. What is exactly? And you look at the, and then I guess you do look at the ordinary case in trying to figure this out. Yeah, or in this case, the least culpable conduct. But in either case- Well, we've got the least culpable conduct under the statute, which is the last phrase. Right. And then we look at what the ordinary case is of that type of conduct or that descriptor. Do we not? Yes, Your Honor. And that would be the driving while intoxicated and causing injury. I mean, that is the least culpable conduct, which has been criminalized. Again, it is important to note that what is prohibited is a consideration of here Mr. Baptiste's actual conduct. It's not conduct writ large. But I don't know if we're talking across each other because I'm not sure that we're saying the same thing. I'm looking at the order under circumstances manifesting extreme indifference to the value of human life recklessly causes such injury. I think what we're supposed to do, now that we've found that that's the least culpable aspect of the provision, is then say, okay, what's the ordinary case that would be within that?  I would respectfully disagree, Your Honor. There I, too, would argue that under that particular, I mean, yes, that particular element is the least egregious conduct. But even under that element, the analysis. Then we look at the least culpable. Conduct under that particular element. Yes, Your Honor. That would be consistent with Moncrief as well as dust camps as well as Justice Thomas's concurrence in Johnson. Okay. Thank you, Your Honors. Well, kudos to you and your teacher. Yeah, really. Super. Thank you. Nice job. And we will take the matter under advisement.